Filed 12/29/23  In re Y.M. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re Y.M. et al., Persons Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>E.M.,<br><br>Defendant and Appellant. | F086306<br><br>(Super. Ct. Nos. 20CEJ300338-1, 20CEJ300338-2, 20CEJ300338-3, 20CEJ300338-4, 20CEF300338-5, 20CEJ300338-6)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Mary Dolas, Judge.

Gregory M. Chappel, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel C. Cederborg, County Counsel, and Ashley N. McGuire, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Meehan, Acting P. J., Snauffer, J. and DeSantos, J.

# INTRODUCTION

E.M. (Mother) filed a timely notice of appeal following the termination of her parental rights to six of her children, now 12-year-old Y.M., nine-year-old De.M., seven-year-old Da.M., six-year-old G.M., five-year-old J.U., and two-year-old P.M. (collectively, the children) under Welfare and Institutions Code section 366.26.[1] Mother's sole claim is that because Fresno County Department of Social Services (Department) failed to conduct an adequate inquiry into whether the children are or may be an Indian child, in compliance with section 224.2, subdivision (b), the juvenile court erred when it found that the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq. (ICWA))[2] did not apply, necessitating remand.

In accordance with this court's decisions, the Department concedes error and prejudice. (*In re Jerry R.* (2023) 95 Cal.App.5th 388, 405 (*Jerry R.*); *In re E.C.* (2022) 85 Cal.App.5th 123, 157 (*E.C.*); *In re K.H.* (2022) 84 Cal.App.5th 566, 621 (*K.H.*).)

We accept the Department's concessions and agree with the parties "that the juvenile court erred in finding the agency conducted a proper, adequate, and duly diligent inquiry, and that the error is prejudicial, which necessitates a conditional reversal of the court's finding that ICWA does not apply and a limited remand so that an inquiry that comports with section 224.2, subdivision (b), may be conducted." (*Jerry R., supra*, 95 Cal.App.5th at p. 405, citing *K.H., supra*, 84 Cal.App.5th at p. 621 & *E.C., supra*, 85 Cal.App.5th at p. 157.)[3]

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

[3] The Department requests we conditionally affirm the judgment. Some courts have adopted conditional affirmance as the appropriate disposition (e.g., *In re J.K.* (2022) 83 Cal.App.5th 498, 507–508), but until we receive further guidance from the California Supreme Court, we adhere to our prior decisions and conditionally reverse the ICWA finding and remand

# PROCEDURAL BACKGROUND[4]

## I. Referral and Placement in Foster Care

On October 27, 2020, Y.M., De.M., Da.M., G.M., and J.U. were living with Mother and stepfather, J.M., who were then recently married.[5] At the end of October 2020, the Fresno County Sheriff's Office received a report concerning the possible sexual abuse of Y.M. and De.M. by a nine-year-old stepsibling. Mother was cooperative and agreed she would disallow any contact between the children and stepsibling, who was no longer living there, and that she would be appropriately protective going forward.

After the Department's social worker left the residence, Y.M. and De.M. disclosed to law enforcement that there were multiple incidents of inappropriate touching over multiple days; they had told Mother and J.M. about the abuse; one incident caused De.M. to have vaginal bleeding, which Mother treated with ice; and J.M. had physically disciplined stepsibling as a result of the abuse. Law enforcement decided to place a hold on the five children over concern that Mother and J.M. were not being honest and were not protecting the children. In addition, law enforcement requested that the police department with jurisdiction place a hold on the nine- and six-year old stepsiblings due to concern that the younger stepsibling might be another victim of the older stepsibling. After Mother's five children were removed from the home and placed in foster care, Y.M. disclosed to a social worker that she had also been touched inappropriately by the paternal grandfather of one of her half siblings.

---

for the limited purpose of curing the ICWA error at issue in this case. (*Jerry R., supra*, 95 Cal.App.5th at p. 431; *E.C., supra*, 85 Cal.App.5th at p. 157; *K.H., supra*, 84 Cal.App.5th at p. 621.)

[4] We include only a limited factual summary given that the sole issue on appeal is Mother's ICWA claim.

[5] J.M. is the presumed father of P.M., with whom Mother was pregnant at the time of the initial referral in October 2020. Y.M.'s alleged father is A.A.; De.M.'s and J.U.'s alleged father is J.L.; and Da.M.'s and G.M.'s presumed father is L.G.-A.

## II.    Petition and Detention

On October 29, 2020, the Department filed a petition under section 300, subdivisions (b)(1) (failure to protect) and (d) (sexual abuse or substantial risk of sexual abuse).  The petition included Judicial Council Forms, form ICWA-010(A), stating that Mother gave no reason to believe that the five children are or may be Indian children.

At the detention hearing held on October 30, 2020, the juvenile court found a prima facie showing had been made that the five children were persons described by section 300, and ordered them detained from Mother and placed in the temporary custody of the Department.  The detention report filed concurrently reflected that ICWA did not apply; Mother, A.A., and L.G.-A. denied any Indian ancestry in their families; and J.L.'s whereabouts were unknown.

## III.    Jurisdiction and Disposition

On January 6, 2021, the juvenile court held a combined jurisdiction and disposition hearing.  The court sustained the petition allegations, found all five children as described by section 300, subdivision (b)(1), and found Y.M., De.M. and Da.M. as described by section 300, subdivision (d).  Pursuant to section 361, subdivision (c)(1), the court found by clear and convincing evidence that there is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the children if returned home, and there were no reasonable means by which their physical health could be protected without removing them from Mother's physical custody.  Mother was granted reunification services.  A.A. and J.L. were denied reunification services under section 361.5, subdivision (a), and L.G.-A. was denied reunification services under section 361.2, subdivision (a).  The court found that ICWA did not apply.

## IV.    Section 300 Petition Following P.M.'s Birth

On April 29, 2021, the Department filed an original petition on behalf of P.M. following his birth, alleging risk of serious physical harm inflicted nonaccidentally by

4.

presumed father J.M., risk of serious physical harm or illness based on substance abuse by Mother, risk of sexual abuse based on Mother's and J.M.'s past failure to protect the other children from sexual abuse by their stepsibling, and risk of neglect by Mother, pursuant to section 300, subdivisions (a), (b), (d), and (j).  On May 3, 2021, the Department filed an amended petition reflecting that P.M. was detained following issuance of a protective custody warrant.  (§ 340.)  Mother and J.M. denied any Indian ancestry.

## V.      P.M.'s Detention Hearing

On May 4, 2021, the juvenile court found a prima facie showing that P.M. was a person described by section 300, and ordered him detained from Mother and J.M., and placed in the temporary custody of the Department.  On July 28, 2021, the allegation based on substance abuse under section 300, subdivision (b), was stricken from the petition, but the court otherwise sustained the allegations and found P.M. as described by subdivisions (a), (d), and (j) of section 300.  The court ordered P.M. removed from Mother's and J.M.'s physical custody under section 361, subdivision (c)(1), granted them reunification services, and found ICWA did not apply.

## VI.     P.M.'s Jurisdiction and Disposition Hearing

On July 28, 2021, the juvenile court held a combined jurisdiction and disposition hearing.  The court sustained the petition allegations and found P.M. as described by section 300, subdivisions (a), (d), and (j).  Pursuant to section 361, subdivision (c)(1), the court found by clear and convincing evidence that there is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of P.M. if returned home, and there were no reasonable means by which his physical health could be protected without removing him from Mother's and J.M.'s physical custody.  Mother and J.M. were granted reunification services, and the court found that ICWA did not apply.

## VII. Review Hearings

On July 28, 2021, the juvenile court held a six-month review hearing for Y.M., De.M., Da.M., G.M., and J.U. Reunification services for Mother were continued.

On June 28, 2022, the juvenile court held a combined 12- and 18-month review hearing for Y.M., De.M., Da.M., G.M., and J.U., and a combined 6- and 12-month hearing for P.M. The court adopted the Department's recommendations, terminated reunification services, and set a selection and implementation hearing for October 12, 2022.

## VIII. Selection and Implementation Hearing

On May 2, 3023, the juvenile court terminated the parental rights of Mother, A.A., J.L., L.G.-A., J.M., and anyone claiming to be the father of the six children, and ordered the children be placed for adoption.

Mother filed a timely notice of appeal.

## DISCUSSION

## I. ICWA and Duty of Inquiry Under California Law

### A. ICWA

"ICWA was enacted in 1978 by Congress 'out of concern that "an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies." 92 Stat. 3069, 25 U.S.C. §1901(4). Congress found that many of these children were being "placed in non-Indian foster and adoptive homes and institutions," and that the States had contributed to the problem by "fail[ing] to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families." §§1901(4), (5). This harmed not only Indian parents and children, but also Indian tribes. As Congress put it, "there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children." §1901(3).' (*Haaland v. Brackeen* (2023) 599 U.S. ___, ___ [143 S.Ct. 1609, 1623] (*Haaland*); accord, *Mississippi Choctaw Indian*

*Band v. Holyfield* (1989) 490 U.S. 30, 32–36 (*Holyfield*); *In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8 (*Isaiah W.*).)

      "'[ICWA] thus aims to keep Indian children connected to Indian families. "Indian child" is defined broadly to include not only a child who is "a member of an Indian tribe," but also one who is "eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." §1903(4). If the Indian child lives on a reservation, ICWA grants the tribal court exclusive jurisdiction over all child custody proceedings, including adoptions and foster care proceedings. §1911(a). For other Indian children, state and tribal courts exercise concurrent jurisdiction, although the state court is sometimes required to transfer the case to tribal court. §1911(b). When a state court adjudicates the proceeding, ICWA governs from start to finish. That is true regardless of whether the proceeding is "involuntary" (one to which the parents do not consent) or "voluntary" (one to which they do).' (*Haaland, supra*, 599 U.S. at p. \_\_\_ [143 S.Ct. at p. 1623]; accord, *Holyfield, supra*, 490 U.S. at p. 36.)

      "'Involuntary proceedings are subject to especially stringent safeguards. See 25 CFR §23.104 (2022); 81 Fed. Reg. 38832–38836 (2016). Any party who initiates an "involuntary proceeding" in state court to place an Indian child in foster care or terminate parental rights must "notify the parent or Indian custodian and the Indian child's tribe." §1912(a). The parent or custodian and tribe have the right to intervene in the proceedings; the right to request extra time to prepare for the proceedings; the right to "examine all reports or other documents filed with the court"; and, for indigent parents or custodians, the right to court-appointed counsel. §§1912(a), (b), (c). The party attempting to terminate parental rights or remove an Indian child from an unsafe environment must first "satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." §1912(d). Even then, the court cannot order a foster care placement unless it finds "by clear and convincing

evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." §1912(e). To terminate parental rights, the court must make the same finding "beyond a reasonable doubt." §1912(f).' (*Haaland, supra*, 599 U.S. at p. ___ [143 S.Ct. 1609, 1623–1624].)

"ICWA sets the minimum standards, providing, 'In any case where State or Federal law applicable to a child custody proceeding under State or Federal law provides a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under this subchapter, the State or Federal court shall apply the State or Federal standard.' (25 U.S.C. § 1921; accord, Welf. & Inst. Code, § 224, subd. (d).) 'The minimum standards established by ICWA include the requirement of notice to Indian tribes in any involuntary proceeding in state court to place a child in foster care or to terminate parental rights "where the court knows or has reason to know that an Indian child is involved."' (*Isaiah W., supra*, 1 Cal.5th at p. 8, quoting 25 U.S.C. § 1912(a).) 'ICWA's notice requirements serve two purposes. First, they facilitate a determination of whether the child is an Indian child under ICWA.' (*Isaiah W., supra*, at p. 8, citing 25 U.S.C. § 1903(4).) 'Second, ICWA notice ensures that an Indian tribe is aware of its right to intervene in or, where appropriate, exercise jurisdiction over a child custody proceeding involving an Indian child.' (*Isaiah W., supra*, at p. 8, citing 25 U.S.C. §§ 1911(a), (c), 1912(a).)

"To facilitate notice in appropriate cases, federal law provides, 'State courts must ask each participant in an emergency or voluntary or involuntary child custody proceeding whether the participant knows or has reason to know that the child is an Indian child. The inquiry is made at the commencement of the proceeding and all responses should be on the record. State courts must instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child.' (25 C.F.R. § 23.107(a) (2023).) California law requires more and,

8.

relevant to the issue raised here, imposes on counties a broad duty of inquiry into whether a child placed in the temporary custody of the county is or may be an Indian child. (§ 224.2, subd. (b).)" (*Jerry R., supra*, 95 Cal.App.5th at pp. 407–409, fn. omitted.)

### B.	Duty of Inquiry Under California Law

"In 2006, 'persistent noncompliance with ICWA led [our state] Legislature … to "incorporate[] ICWA's requirements into California statutory law."'" (*In re Abbigail A.* (2016) 1 Cal.5th 83, 91, quoting *In re W.B.* (2012) 55 Cal.4th 30, 52 (*W.B.*).) "'In 2016, new federal regulations were adopted concerning ICWA compliance.'" (*K.H., supra*, 84 Cal.App.5th at p. 595, quoting *In re D.S.* (2020) 46 Cal.App.5th 1041, 1048 (*D.S.*) [citing 81 Fed.Reg. 38864 (June 14, 2016), revising 25 C.F.R. § 23 (2019)].) Prior to that time, 'neither ICWA itself nor the implementing federal regulations in effect … imposed a duty on courts or child protective agencies to inquire whether a child involved in a dependency proceeding was an Indian child.' (*In re T.G.* (2020) 58 Cal.App.5th 275, 289 (*T.G.*), citing *In re A.B.* (2008) 164 Cal.App.4th 832, 838 & *In re H.B.* (2008) 161 Cal.App.4th 115, 120.) '[F]ederal regulations governing ICWA … now require an ICWA inquiry be made at the inception of dependency proceedings, as well as at all proceedings that "may culminate" in foster care placement or termination of parental rights.' (*In re Rylei S.* (2022) 81 Cal.App.5th 309, 323, fn. 11, citing 25 C.F.R. §§ 23.2(2), 23.107(a) (2022) & *In re Austin J.* (2020) 47 Cal.App.5th 870, 883.)

"Subsequently, the California Legislature enacted Assembly Bill No. 3176,[6] effective January 1, 2019, which '"made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements."'" (*K.H., supra*, 84 Cal.App.5th at p. 595, quoting *D.S., supra*, 46 Cal.App.5th at p. 1048 [citing Assem. Bill 3176 & *In re A.W.* (2019) 38 Cal.App.5th 655,

---

**6**	"Assembly Bill No. 3176 (2017–2018 Reg. Sess.) (Assembly Bill 3176)." (*Jerry R., supra*, 95 Cal.App.5th at p. 410, fn. 11.)

662, fn. 3].) In relevant part, Assembly Bill 3176 repealed former sections 224.2, pertaining to notice, and 224.3, pertaining to inquiry, and reenacted them in different form. (Stats. 2018, ch. 833, §§ 4–7.) Section 224.3 now governs notice and section 224.2 inquiry.[7]

"Now, as then, California law expressly recognizes 'There is no resource that is more vital to the continued existence and integrity of Indian tribes than their children, and the State of California has an interest in protecting Indian children who are members or citizens of, or are eligible for membership or citizenship in, an Indian tribe. The state is committed to protecting the essential tribal relations and best interest of an Indian child by promoting practices, in accordance with the federal Indian Child Welfare Act of 1978 (25 U.S.C. Sec. 1901 et seq.) and other applicable state and federal law, designed to prevent the child's involuntary out-of-home placement and, whenever that placement is necessary or ordered, by placing the child, whenever possible, in a placement that reflects the unique values of the child's tribal culture and is best able to assist the child in establishing, developing, and maintaining a political, cultural, and social relationship with the child's tribe and tribal community.' (§ 224, subd. (a)(1).)[8] Assembly Bill 3176 revised and recast the duties of inquiry and notice, in accordance with federal law, and, relevant to inquiry, 'revise[d] the specific steps a social worker, probation officer, or court is required to take in making an inquiry of a child's possible status as an Indian child.' (Legis. Counsel's Dig., Assem. Bill 3176, Stats. 2018, ch. 833, p. 1.)

---

**7**     "Section 224.2 was subsequently amended by Assembly Bill No. 686 (2019–2020 Reg. Sess.), effective January 1, 2020; Assembly Bill No. 2944 (2019–2020 Reg. Sess.), effective September 18, 2020; and Assembly Bill No. 2960 (2021–2022 Reg. Sess.), effective January 1, 2023. Those amendments did not affect subdivision (b) of section 224.2, however." (*Jerry R., supra*, 95 Cal.App.5th at p. 410, fn. 12.)

**8**     "Assembly Bill 3176 only effected minor technical changes to section 224, subdivision (a)(1)." (*Jerry R., supra*, 95 Cal.App.5th at pp. 410-411, fn. 13.)

"As this court summarized in *K.H.*, "'[n]otice to Indian tribes is central to effectuating ICWA's purpose ...." (*In re T.G.* (2020) 58 Cal.App.5th 275, 288 (*T.G.*), citing *Isaiah W., supra*, [1 Cal.5th] at p. 8.) However, it is typically "not self-evident whether a child is an Indian child" (*Benjamin M., supra*, 70 Cal.App.5th at p. 741), and "the question of membership is determined by the tribes, not the courts or child protective agencies" (*T.G., supra*, at p. 294). To ensure notice in cases in which it is known or there is reason to know an Indian child is involved (25 U.S.C. § 1912(a); Welf. & Inst. Code, § 224.3, subd. (a)), the law imposes an affirmative and ongoing duty to inquire whether a child subject to dependency proceedings is or may be an Indian child (§ 224.2, subd. (a))' (*K.H., supra*, 84 Cal.App.5th at p. 588), and following the passage of Assembly Bill 3176, 'agencies now have a broader duty of inquiry and a duty of documentation' (*K.H., supra*, at p. 588, fn. omitted, citing § 224.2, subd. (b) & [California Rules of Court,] rule 5.481(a)(5)).[9]" (*Jerry R., supra*, 95 Cal.App.5th at pp. 409–411.)

## II.    Standard of Review

"'The juvenile court's finding that ICWA does not apply to the proceeding rests on two elemental determinations, "subject to reversal based on sufficiency of the evidence."' (*K.H., supra*, 84 Cal.App.5th at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C., supra*, 85 Cal.App.5th at p. 142; *Adoption of M.R* (2002) 84 Cal.App.5th 537, 542; rule 5.482(c).) First, '[t]he court must find there is "no reason to know whether the child is an Indian child," which is dependent upon whether any of the six circumstances set forth in subdivision (d) of section 224.2 apply.' (*K.H., supra*, at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C., supra*, at p. 143; rule 5.482(c)(1).) Second, '[t]he juvenile court must … find a "proper and adequate further inquiry and due diligence …."' (*K.H., supra*, at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C., supra*, at p. 143; rule 5.482(c)(1).)

---

**9**      All further references to rules are to the California Rules of Court.

"The juvenile court's finding on the second element 'requires the … court to "engage in a delicate balancing of" various factors in assessing whether the … inquiry was proper and adequate within the context of ICWA and California law, and whether … [there was] due diligence.' (*K.H., supra,* 84 Cal.App.5th at p. 601, quoting *In re Caden C.* (2021) 11 Cal.5th 614, 640; accord, *E.C., supra,* 85 Cal.App.5th at p. 143; *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1004–1005.) Therefore, we employ a hybrid standard and review the court's determination for substantial evidence and abuse of discretion. (*K.H., supra,* at p. 589; accord, E.*C., supra,* at p. 143; *In re Ezequiel G., supra,* at p. 1003.)" (*Jerry R., supra,* 95 Cal.App.5th at p. 427.)

## III.  Analysis

### A.  Error

The record reflects that the Department inquired of Mother; maternal grandmother; Da.M.'s and G.M.'s presumed father, L.G.-A.; and P.M.'s presumed father, J.M., all of whom denied Indian ancestry, but there was no documented inquiry of any other family members. (§ 224.2, subd. (i)(2); rules 5.481(a)(5), 5.482(c).) Mother claims that this limited inquiry into whether the children are or may be Indian children fell short of the proper, adequate and duly diligent inquiry required under section 224.2 and, therefore, the juvenile court erred in finding that ICWA does not apply. (§ 224.2, subds. (b), (i)(2).) The Department concedes the issue.[10]

"The law does not require the court or the agency '"to cast about" for investigative leads'" (*Jerry R., supra,* 95 Cal.App.5th at p. 428, quoting *In re A.M.* (2020) 47 Cal.App.5th 303, 323), but the record affirmatively reflects that there were other

___

[10]    P.M. was taken into protective custody by warrant under section 340 following his birth. In *Jerry R.*, this court agreed with *In re Delila D.* (2023) 93 Cal.App.5th 953, 976, review granted September 27, 2023, S281447, and held that the duty of inquiry under section 224.2, subdivision (b), also applies to children taken into protective custody by warrant. (*Jerry R., supra,* 95 Cal.App.5th at p. 404.) The Department does not dispute the applicability of section 224.2, subdivision (b), to P.M.

extended family members available to ask, including a maternal aunt, two maternal uncles, and the paternal grandparents of Da.M. and G.M.[11] The record is otherwise silent concerning extended family members.

"'Although complying with the duty of inquiry and documentation under ICWA is unlikely to 'prove onerous' in most cases [citation], in no event may we interpret the law to relieve the court or the agency of complying with the plain directives imposed by statute and rule (*K.H., supra*, [84 Cal.App.5th] at p. 620; see § 224.2; rules 5.480–5.482). There may be cases in which there is no one else to ask beyond the parents [and one grandparent], but, if that is so, the record must be developed to reflect that fact and supported by documentation. (Rule 5.481(a)(5).) Properly developed and documented, 'the court has relatively broad discretion to determine [that] the … inquiry was proper, adequate, and duly diligent on the specific facts of the case.' (*K.H., supra*, at p. 589; accord, *E.C., supra*, 85 Cal.App.5th at p. 157.)" (*Jerry R., supra*, 95 Cal.App.5th at p. 428.)

In this case, we agree with the parties that the inquiry fell short of that required to comply with section 224.2, subdivision (b). (*Jerry R., supra*, 95 Cal.App.5th at p. 429, citing *K.H., supra*, 84 Cal.App.5th at p. 605.)

## B.     Prejudice

Mother and the Department also agree that the error is prejudicial. "[U]under California law, "'[n]o judgment shall be set aside … for any error as to any matter of

---

**11**     Mother and the Department include A.A. in the group of relatives who were asked about Indian ancestry, and the Department includes A.A.'s sister, M.G., misidentified in the brief as a maternal aunt, in the group of relatives who were not asked. "Until biological paternity is established, an alleged father's claims of Indian heritage do not trigger any ICWA notice requirement because, absent a biological connection, the child cannot claim Indian heritage through the alleged father." (*In re E.G.* (2009) 170 Cal.App.4th 1530, 1533; accord, *In re S.H.* (2022) 82 Cal.App.5th 166, 171; see 25 U.S.C. § 1903(4), (9).) Therefore, the Department's duty of inquiry on remand does not extend to either A.A. or J.L. (*In re S.H., supra*, at p. 171; *In re E.G., supra*, at p. 1533.)

procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.)' (*K.H., supra*, 84 Cal.App.5th at p. 606; accord, *E.C., supra*, 85 Cal.App.5th at p. 151.) 'California law generally interprets its constitutional miscarriage of justice requirement "as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error" (*In re Celine R.* [(2003)] 31 Cal.4th 45, 60 …, citing [*People v.*] *Watson* [1956] 46 Cal.2d [818,] 836; accord, *In re Christopher L.* (2022) 12 Cal.5th 1063, 1073 (*Christopher L.*); [*In re*] *A.R.* [(2021)] 11 Cal.5th [234,] 252).' (*K.H., supra*, at p. 607; accord, *E.C., supra*, at p. 152.)

"Courts '*generally* apply a *Watson* likelihood-of-success test to assess prejudice, [but] a merits-based outcome-focused test is not *always* appropriate because it cannot always adequately measure the relevant harm.' (*K.H., supra*, 84 Cal.App.5th at p. 609, citing *In re A.R., supra*, 11 Cal.5th 234, 252–253 (*A.R.*); accord, *E.C. supra*, 85 Cal.App.5th at pp. 153–154.) '[W]here the injury caused by the error is unrelated to an outcome on the merits, tethering the showing of prejudice to such an outcome misplaces the measure, at the expense of the rights the law in question was designed to protect.' (*K.H., supra*, at p. 609, citing *A.R., supra*, at p. 252; accord, *E.C., supra*, at p. 154.)

""'ICWA compliance presents a unique situation'" (*K.H., supra*, 84 Cal.App.5th at p. 608, quoting *In re K.R.* (2018) 20 Cal.App.5th 701, 708; accord, *E.C., supra*, 85 Cal.App.5th at p. 152), because 'ICWA is not directed at reaching, or protecting, a specific outcome on the merits' (*K.H., supra*, at p. 609; accord, *E.C., supra*, at p. 154). Rather, '"[t]he purpose of ICWA and related California statutes is to provide notice to the tribe sufficient to allow it to determine whether the child is an Indian child, and whether the tribe wishes to intervene in the proceedings" ([*In re*] *N.G.* [(2018) 27 Cal.App.5th 474,] 484, citing *In re K.R., supra*, at p. 708), and an adequate … inquiry facilitates the information gathering upon which the court's ICWA determination will rest.' (*K.H.,*

14.

*supra*, at p. 608; accord, *E.C., supra*, at pp. 152–153.)  Here, the appealing part[y is Mother] and [she does] not bear the burden of complying with ICWA requirements. (Rule 5.481(a); see *K.H., supra*, at p. 608; *E.C., supra*, at p. 153.)  Further, the ultimate determination whether a child is an Indian child rests with the tribe.  (*K.H., supra*, at p. 596; accord, *E.C., supra*, at pp. 139–140.)

"As we recognized in *K.H.*, 'the duty of inquiry is a continuing one (§ 224.2, subd. (a)[; rule 5.481(a)], … [but] if the inquiry is inadequate at the outset, the likelihood that the opportunity to gather relevant information will present itself later in the proceeding declines precipitously.'  (*K.H., supra*, 84 Cal.App.5th at p. 609; accord, *E.C., supra*, 85 Cal.App.5th at p. 154.)  'The relevant rights under ICWA belong to Indian tribes and they have a statutory right to receive notice where an Indian child may be involved so that they may make that determination.  It necessarily follows that [in the context of ICWA and consistent with *A.R.*,] the prejudice to those rights lies in the failure to gather and record the very information the [lower] court needs to ensure accuracy in determining whether further inquiry or notice is required, and whether ICWA does or does not apply.'  (*K.H., supra*, at p. 591; accord, *E.C., supra*, at p. 154.)  '[W]here the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due diligence, reversal for correction is generally the only effective safeguard.'  (*K.H., supra*, at p. 610, citing *A.R., supra*, 11 Cal.5th at pp. 252–254; accord, *E.C., supra*, at p. 155.)" (*Jerry R., supra*, 95 Cal.App.5th at pp. 429–431.)

In this case, the inquiry on the children's maternal side extended only to Mother and maternal grandmother, and the record reflects there are at least three additional maternal relatives available to ask, one maternal aunt and two maternal uncles.[12]

---

[12]     We recognize that the children reside with maternal grandmother, who plans to adopt them.  The Department does not argue that placement with the children's maternal relative renders the ICWA error harmless, likely because if a child is found to be an Indian child, the

(§ 224.2, subd. (b); see 25 U.S.C. § 1903(2) [defining extended family member].)  On the children's paternal side, only Da.M.'s and G.M.'s father, L.G.-A., and P.M.'s father, J.M., were asked, although the record reflects contact with L.G.-A.'s parents.  "Under these circumstances, [the] inquiry …'fell … short of that required to gather the information needed to meaningfully safeguard the rights of the tribes, as intended under ICWA and California law, and remand for correction is required.' (*K.H., supra*, 84 Cal.App.5th at p. 620, citing *A.R., supra*, 11 Cal.5th at pp. 252–253; accord, *E.C., supra*, 85 Cal.App.5th at p. 156.)  'A finding of harmlessness on this record would necessarily require speculation and "is at odds with the statutory protections that ICWA and California law intend to afford Indian children and Indian tribes."' (*E.C., supra*, at p. 155, quoting *K.H., supra*, at p. 611.)" (*Jerry R., supra*, 95 Cal.App.5th at p. 431.)

Of final note, "our decisions in *K.H.* and *E.C.* should not be interpreted as requiring the juvenile court to ensure 'an exhaustive search for and questioning of every living relative of [the children].' (*K.H., supra*, [84 Cal.App.5th] at p. 621; accord, *E.C., supra*, 85 Cal.5th at p. 157.)  'So long as the court ensures the inquiry is reasonable and of sufficient reach to accomplish the legislative purpose underlying ICWA and related California law, the court will have an adequate factual foundation upon which to make its ICWA finding.' (*K.H., supra*, at p. 621, citing § 224.2, subd. (i)(2); accord, *E.C., supra*, at p. 157; rule 5.482(c).)" (*Jerry R., supra*, 95 Cal.App.5th at p. 431.)

## DISPOSITION

The juvenile court's finding that ICWA does not apply is conditionally reversed, and the matter is remanded to the court for the limited purpose of ensuring compliance with the inquiry and documentation provisions set forth in section 224.2 and rule 5.481.  If, after determining that an adequate inquiry was made, the court finds that ICWA

---

child's tribe might have a different placement preference.  (*In re D.B.* (2022) 87 Cal.App.5th 239, 247–249; 25 U.S.C. §§ 1903(2), 1911, 1915.)

16.

applies, the court shall proceed in compliance with ICWA and related California law. If the court instead finds that ICWA does not apply, the court shall reinstate its ICWA finding.